Good morning, Your Honor. May it please the Court, Bill Messinger for Appellants. This case presents a textbook example of a breach of fiduciary duty. An agent secretly agreeing to compromise the interest of a principal in exchange for benefits from an opposing party. Specifically, the union here secretly agreed to not seek improved retirement or health benefits for nurses in exchange for the employer's assistance with unionizing those nurses and requiring that they pay fees as a condition of their employment. My initial reaction to that argument in your brief, counsel, was that this, you argue that it was unhelpful to your clients, yet the argument is also made, and I guess you say it in your brief, that this was valuable to your clients in that they didn't have to, they didn't go through the usual problems with the, oh, that you said it was helpful, I think, your opponent said it was helpful, but it was helpful to the nurses in that they got their union quicker, didn't they? It was helpful for the union to organize those nurses, and perhaps for the nurses who wanted the union, it could be considered helpful, the organizing assistance, but what's at issue here is the pre-recognition deal that the union made to obtain that organizing assistance from the hospital, namely it agreed not to seek better health or retirement benefits for those nurses and concealed that deal as a quid pro quo for the hospital's assistance to unionize those nurses. Are there additional exhibits, the side letter we're told about, the so-called side letter, is there more to this than this court has seen? Yes. We don't really see even the side letter, what do you, what is of record that we should be looking at? I believe in the record, Your Honor, it's restricted to the complaint and documents referenced therein, which of course would include the side letter and the confidential labor relations agreement, but even that agreement isn't complete. The standstill agreement, which is referenced in the confidential labor relations agreement, was not disclosed. There's an exhibit to the side letter that actually lays out the exact medical benefits that will be frozen. That exhibit, I believe it was exhibit two, referenced in section 2B of the side letter, has not been disclosed. And then also in addition to that, we don't know what we don't know. The fact the side letter was disclosed was something that the union did voluntarily in its reply brief. There could be more, and on this record, my clients don't know. We're on the outside looking in, so to speak, as to what the complete arrangement is between the hospital and the union. What's your response to the argument that this all predated the representation? The agreement was certainly entered into before representation and before the union owed a fiduciary duty, but it's our position that the agreement has continued thereafter. And so it's the continuing maintenance of this illegal agreement. That's a breach of fiduciary duty. Are they maintaining it just by being subject to it and not objecting to it? Is that enough to maintain it? Yes, Your Honor. Being a party to the agreement. Why doesn't that happen as soon as the agreement goes into effect? Well when the agreement went into effect, the union didn't owe a fiduciary duty to the nurses yet because it was not yet the representative. When it became the representative. Yes. And at that point it was in violation of its duty of fair representation. Exactly, Your Honor. That's more than six months before a suit was brought, right? Yes, Your Honor. However, my clients didn't have evidence of the pre-negotiated agreement until November 17th, which was when a confidential contract proposal was leaked to the entire bargaining unit. So is accrual of a cause of action depending on the amount of evidence that you have? Yes, Your Honor. Under federal labor law, the case of NIDA v. Plant Association, the statute of limitations for a duty of fair representation claim begins to run when the plaintiff had cause to believe or reasonable cause to believe that the violation had occurred. Why didn't they have that the day after they became the representative? Didn't they complain about this very thing before then? Before that point, they said that they knew that there was a deal being concealed and it could include pre-negotiated concessions, but they didn't have evidence. But it's the very fact that there are secret things that went into their representation that are binding them is a violation, you say, or is it the content of the secret things? Well, they didn't know it had pre-negotiated terms. In other words, But you thought there were, because you claimed that there were, right? Claimed that there could be, because in my experience, and there's a lot of articles to show this, many organizing agreements, but not all, do include pre-negotiated terms as a quid pro quo. So based upon that, the objections to the election were they're concealing this organizing agreement which could include pre-negotiated terms, but it wasn't until November 17th there was actually evidence of them. And so before November 17th, Your Honor, this lawsuit could not have been filed. I think that's clear by considering a counterfactual. Let's say before November 17th, filed the suit, it would literally be a shot in the dark. It could be wrongful. And if it wound up, there really wasn't. You would have six months to gather evidence, and that's what a statute of limitations does, right? It gives you an amount of, you're on notice of the fact that you've been injured, and you have the amount of time to gather some evidence and sue, right? That's the idea of a statute of limitations, right? Not that you're able to actually file at the beginning of the statutory time, but that you ought to be able to file by the end of the statutory time. Yes. And so from November 17th, it was filed within six months of that reveal, of the fact. So on November 17th, when it was revealed that there were pre-negotiated terms. When did they become the representative? October 5th. So between October 5th and November 17th, there was no firm evidence, at least not enough to file this lawsuit, that there were pre-negotiated terms. But there was apparently enough evidence to file an unfair labor practice. We didn't file an unfair labor practice charge. It was trying to intervene in the election proceedings to say the election, the union's concealment of the overall agreement, interfered with employee free choice. And as part of that... And did you allege that before October? Yes, that was before even the recognition. But at that point... And the question Judge Cook asked, my question too, why is it, I mean, if it was enough to assert in that proceeding, why wasn't it enough to be the basis for a lawsuit? Because the objection was concealment of the overall agreement, which we say could include pre-negotiated terms. We didn't say that it did because we didn't know. It was not until we didn't have enough evidence that there actually were those terms until November 5th. And that's particularly relevant on Counts 2 and 3. Count 1 goes only to concealment. Count 2 and 3 attacks the actual agreement itself. And until we actually knew there truly were pre-negotiated terms of employment, I didn't have enough evidence to present that claim. Because of course, in filing a lawsuit... Okay. You had some evidence to determine that you may have a claim, that you do have a claim? On November 17th. That was the first tangible evidence when the contract proposal was leaked and it said health benefits, pre-negotiated language to follow. That was the first tangible evidence that I could use as a basis for this complaint. And of course, the complaint was called... And of course, I've read your opponent's brief on page 33. They talk about you had ample opportunity to pursue a timely charge with the NLB or a civil claim for breach of duty of fair representation by mid-March 13th. Is that the date running from? Sorry, the date's off the top of my head. But I don't believe, again, until the November 17th reveal, Your Honor, that was the first tangible evidence that could be used to support this duty of fair representation claim. That's before the court. Before then, there wasn't enough evidence to support this. And of course, in drafting and filing a complaint with the court, counsel has a duty to ensure that the complaint is based upon facts. I think the argument is, counsel, that you're now before this court, but your claims ought to have been raised other places. And the claim you bring here today seems to suffer from some failing with respect to whether or not there's been an injury, for example. Your words are there's a threat of injury. So the two issues. The first, I believe you're referring to whether or not this case should have been filed with the NLRB as opposed to the federal court. Could it have been? Yes. The federal courts and the NLRB have concurrent jurisdiction over a duty of fair representation claims. The court primary jurisdiction, but the NLRB can bootstrap it into an 8B charge. But it's very clear under Supreme Court precedent cited in the brief that this court has jurisdiction not- Can choose. Yes, exactly. Can choose. So then going to the injury, of course, one of the primary purposes of this case is to prevent any injury resulting from this pre-negotiated agreement. Not to seek better health and retirement benefits. So we want to stop that from occurring before it occurs. Just so I can frame the nature of the harm you're alleging. It's hard for me to see, but I wonder what your position would be if it's all out in the open. If the union says, we're negotiating with this company, we've agreed to this and that limitation on what we'll do if we become a bargaining agent. And then, with reasonable notice, the people who vote vote in favor of that. Then there's no problem at that point. Is that correct or not? Would seem like that would be a way in which the system could reach the equilibrium. You wouldn't have to choose between a union that's going to demand unreasonable things or no union at all. You could get a union that's pre-agreed to only demand a certain limited number of things. There's nothing wrong with that as long as there's notice. Is there or is there something wrong with that? I would submit there is. I would submit that it would be a much closer question. Of course, here you have the secrecy, so it's a different deal. But even if you didn't have the secrecy, I believe that creates a conflict of interest just fundamentally incompatible with collective bargaining. Has that ever been found at the pump? Go ahead. I was no doubt asking the same question. Has that played out? It seems like your argument is best put as the present agreement is or representation is tainted, that you cannot trust. That's not the claim brought here because this court, we're not challenging the representation. The claim brought here is that this representation poses a threat. It's the pre-recognition agreement poses the threat. So it's that backroom deal that we're attacking. So it's the representation itself. That is tainted, can't be trusted. Is that a fair way of thinking about it? I would say that colloquially, that the representation here is tainted, but that's not the basis of the claim. Because that would be a claim. We're trying to get to what's the basis of the claim. Yes. And that is that the side letter agreement is illegal on its face and that its concealment was also illegal. I'm trying to tease out its illegality because it's not disclosed and its illegality even if it were disclosed. Yes, Your Honor. You want to talk about them all the same, then that's confusing to me, but I commend you for being willing to talk about them separately. But if you talk about them separately, then you have to assume just for the moment, contrary to fact, that they were disclosed. I'm having trouble seeing what the problem is, where there's a conflict if they were disclosed. Because if you say that's an inherent conflict and therefore, in effect, you can't do it, you have a system which naturally leans towards industrial squabble rather than leaning towards industrial peace, right? Because you could lean towards, the system could create industrial peace by allowing workers to select a more moderate union, one which has limited what it's going to demand by negotiating with a company, right? You would think that that would be at least allowable. But you're saying, no, even that can't be allowed. And I know that's not what's here because you're saying, well, all of that is hypothetical because there was no disclosure here. But I'm just trying to see whether or not disclosure is the only issue. Are you with me? Do you see what I'm asking? Yeah, absolutely, Your Honor. I was moved to a different question as I was getting ready to address, would this be legal if it was completely disclosed? And my answer was, no, because of the conflict. And the reason is, is that when the National Labor Relations Act was originally promulgated, this issue actually came up. There a big issue with what was called company unions. And the argument for them was that employees should be able to pick. And if they want a union that's more or less controlled by their employer, that's employee free choice. Congress rejected that. That's controlled unions. Well, it's here you have partial control. When it comes to retirement benefits. It's a contractual limitation. It's not. Well, I submit there's a. It's a contractual, you know, we're not going to ask for this during the first three years. Doesn't make them a company union, does it? With respect to those benefits, yes. Because the union entered into that before it was acting as an agent of the employees. To use an analogy with lawyers, it'd be like a lawyer. No, they're trying to become agency of that. The lawyer could say, you know, I'll represent you on this case and not another case. But he couldn't, but a lawyer couldn't agree with an insurance company to say, any case I have against the insurance company, I'll settle on these terms. And then anybody who comes to that attorney says, I want you to represent me against the insurance company, you know, the lawyer couldn't say, well, you know, I have this deal with them. I settle everything on 50 cents on the dollar. Because there the client is deprived of an agent with complete loyalty to his interests. The same is true here. NNOC, the union, is an agent with two masters when it comes to health benefits and retirement. The company controls what the union can seek on those terms. There is no bar, there's no contract. No, Your Honor. There has ever been a contract. It's no, yes. Okay. And the relief you seek from this court is a, it's a DJ, declaratory judgment? Yes. And injunctive relief, having the agreement null and void. Isn't, to nullify the agreement. Yes. Isn't that, can you get that relief here? Have you, isn't that the duty of fair representation? You're saying they cannot be fair because they have this arrangement with the employer affinity? Yes, Your Honor. That this arrangement is both a conflict of interest and an act of self-dealing. That this side letter agreement, it's not necessarily the entire agreement, some of which we don't have before us, but the side letter agreement where they committed in advance to what they would seek, that yes, that should be declared null and void and illegal. Thank you, Your Honor. Good morning, Your Honor. I'm Jane Lawhon, representing the National Nurses Organizing Committee in Good Morning Council. I'd like to touch on a few points raised in, by questions from the panel in counsel's presentation. First of all, the question as to whether the accrual of the cause of action depends on the amount of evidence, and the answer to that is no. The first claim for, was for concealment. Not the substantive terms of the pre-negotiated agreement, but the concealment. And as Judge Pearson analyzed, plaintiffs were necessarily aware of that concealment. On September 5th, 2012, when they attempted to file objections with the NLRB, and the phrase appears in that filing with the NLRB by Mr. Messenger about a secret agreement. That phrase, secret agreement, is repeated on September 19th. A secret agreement that just dealt with, for instance, how the election was going to be conducted, as opposed to a secret agreement as to benefits? No, because they already mentioned that the secret agreement could include pre-negotiated concessions on September 19th. Theoretically one could, but they knew it was more than that. Is that enough? I mean, I understand your argument, but is that enough to sue once the representation becomes, once they become, the day after representation, could they have sued then, only knowing what they don't know? But they might be there, I think something might be there, and they don't know it. They know they don't know it, but they don't, because they don't know it, they don't know what's there. Can they sue then? I think their suit would have just been just as lacking in merit then as it is now. But that's not the issue. They could have raised the lawsuit, and it would have been found probably, in our view, it's not a, the agreement, the important thing is the agreement was entered into in late July. They would have to reveal what the agreement is, right? I mean, they'd have to know what it is. They didn't know. It's irresponsible to say there's an agreement without knowing exactly what it was. They did not, they did not, they had not seen the terms of the agreement when this lawsuit was filed. They would have the same information. They had something that came down on November 17th. Yes, which is irrelevant for statute of limitations purposes, and the NIDA case is similarly distinguishable because again, you have to remember, they're arguing concealment. They're not arguing that the substantive terms of the pre-negotiated agreement are arbitrary. And if the substantive... We got into that in the other argument, but assuming that for the moment that we're just I'll tell you when. You don't find out what's concealed. You just are afraid that there's something that's been concealed. You can bring it as soon as you suspect there's, they, in the complaint, your honor, they allege that they were told that there was an agreement between the employer and the union. And the agreement also involved access for the union to campaign. That's alleged in the complaint. They have evidence meeting rule 11 or whatever to say that there were, that there was something in the agreement that limited their benefits? Yes. Counsel apparently felt certain enough of it to put in a pleading before the NLRB. Which said we suspect, right? No, it said could include. And your honor, if you remember the Montague... Could include is not, is different from includes, right? Correct. But I believe it's still that the district court was correct in finding the statute of limitations to begin to run as of the date they entered into the agreement. And you... Suppose if one is arguing that there is an agreement, the reason to think there is an agreement and it is between parties that need to stay adversarial in order to fulfill their roles. I think that's somewhat the argument. That's the argument in counsel. It's cooperation and, but I think Judge Rogers point is, you know, to be made that we don't know what concession, whether these were concessionary. The agreement was concessionary. I want to address that now, your honor. Thank you for raising that. The pre-negotiated agreement side letter, first of all, never was an agreement. We're still on the... I'm going to whether it's concessionary or not. Well, I know you want to move there, but I don't know that you've quite answered whether or not they had enough. They had enough, your honor. The district court felt they had enough. They filed pleadings saying there was an agreement. They filed pleadings saying that the agreement could contain benefit concessions. The National Right to Work Committee has brought numerous lawsuits, including the Montague case, I believe in which you both participated. To back to Judge Rogers' question, is your point that there doesn't appear to be anything new in hand for the plaintiffs here that they didn't have when they brought the NLRB action? At both points in time, they had the benefit of knowing there was a side agreement without seeing it, or there appeared to be a side agreement. They brought the other action then, and this isn't all that any different. Correct, your honor, but it's very important to keep in mind what they alleged as the violation in count one, which again was concealment. Here. Correct. That's what they charged in count one, concealment. It's absolutely irrefutable that they knew about concealment. You don't use the word secret unless you're talking about concealment. So as to count one, they were well aware. As to counts two and three, the district court had a different basis for dismissing those claims, which is the fact that the union had no duty of fair representation at the time the agreement was entered into. And I do want to address for a moment, if I may now, your honor, whether the agreement was concessionary. Because I think lots of plaintiffs' arguments, certainly the subtext of it, relies on two fundamentally false things. One is that the pre-negotiated agreement, which never was an agreement, would be adverse to the nurse's interests. Why do you say it never was an agreement? Because your honor, it was never signed. And you can see in the record that, and this is at 16-2, page ID 309, that no provisions of this agreement are binding until signed, and it was never signed. And if their relief is that it isn't going to be binding, why don't you all just settle this case and say it's not binding? Beyond the fact that it's never signed, your honor, its expiration date has long since come and gone. This is an answer to my question. Why don't you, why defend this litigation? Why not just say, okay, we disagree with your reasoning, but this thing is not binding? Your honor, this litigation is part of a concerted political effort to weaken unions. Would you be willing to do that now? Counsel's well aware of our position that the agreement was never signed. Why do you seem reluctant to say yes? I'm sorry, your honor. Would you be willing to do that now? Just say, I agree that this thing is not binding? No, your honor, because I, there, it's, well, because Ms. You're arguing that it's not binding, but you're not willing to say that it's not binding. No, I'm defending the honor of the union, your honor, and this agreement is not concessionary. And I want you to understand that in the language that says that they maintain health benefits, it also says, unless This modification Your case is to defend your honor. I mean, I understand you might want to bring them, but if there's no real dispute here, that's why I'm surprised. I thought the whole idea was you were defending the terms of this agreement. No. The agreement never existed. Well, speaking hypothetically, you could go into a room and settle this case by saying, we agree that this never existed. As long as they want to, you know, undo the rest of the damage they've done to my client's reputation by the aspersions that we agreed to something, or that we're in the control of the employer. Other than the aspersions, that would be okay with you? I mean, I'm not here to settle a case, but I'm saying I thought that the argument here was that you would, they don't want your union any longer. They never wanted our union, your honor. Yes, I understand. That's the plaintiff's role. They are very strongly opposed to unions. But I did It's not before us, right? No, it's not. But I do want you to understand, because I'm not quite sure I finished the point, that the agreement that health care benefits that were in effect in, as of a certain date in 2012, would remain in effect throughout negotiations and during the first contract does not set a ceiling on health benefits. It sets a floor because the next language after that, which counsel has never addressed I mean, if it's a contract, it sets a floor. If it were an agreement, correct, your honor. It says unless modifications are agreed to in writing by the parties. That language preserves for the union the right to propose improved health benefits. If we have the muscle to get them, we can certainly, according to the terms of the agreement, if it were finalized, we certainly preserved our right to do that. Does the company agree that this is not, or the company, okay. Your honor, Affinity Medical Center, which is an affiliate of the Community Health Systems, is suing the union in the Northern District of Ohio on a 301 lawsuit on a complaint for enforcement of a contract implied in fact. This same outfit, Community Health Systems, two affiliates have sued my union in California, in the Central District and the Southern District, on the same theory that this agreement, the one that plaintiffs are talking about, is enforceable. They lost at the district court. So you two could agree that it's unenforceable, but you got the hospital that's going to say it is enforceable. Correct. So if we say it's not enforceable here, that's not going to bind the hospital, is it? I don't believe so, your honor. But in any event. So what would be the relief that we would grant then? To us? Affirm the dismissal. But to them? I'll leave that to them. All right. The other fundamental misstatement in this case that I want to correct is that the plaintiffs would somehow have no legal recourse if they could not, if they were time barred on their right to sue for duty of fair representation. They had no legal recourse back then. And that's the, as I just alluded to, the Montague case in which both Judge Rogers writing the opinion and Judge Cook on the panel. In that. Must have been good. Beg your pardon? Must have been good. Very incisive. In that case, represented by the same law firm, the National Right to Work Foundation, the employees challenged their employer and union's pre-negotiated agreement. They said, and they filed it as a charge alleging restraint and coercion by the union, not a because, in that case, as in our case, no duty was owed at the time the agreement was entered into. But in that case, the NLRB initially issued complaint against the employer and the union and then the ALJ dismissed the complaint and the board affirmed the dismissal. In fact, in that NLRB proceeding, the charging party, the employees who had filed the initial charge, tried to argue that the pre-negotiation agreement was a breach of the union's duty of fair representation. And the NLRB refused to even entertain that theory on their general procedural rule that they control the complaint. So the plaintiffs here could have done what the employees did in Montague. They could have filed a timely NLRB charge under 8B1A alleging restraint and coercion in the exercise of their rights. But they didn't. And that's why... And they argued they didn't have to. Well, Your Honor, I think... It's an alternative forum. No, it's not an alternative forum to an 8B1A restraint and coercion charge, Your Honor. It's concurrent jurisdiction... That's not what they allege. And I mean, the relief they seek here now is not that. Understood, Your Honor. But what I'm saying is the concurrent jurisdiction is not as between a charge timely filed against a union for engaging in a pre-negotiated agreement. There's no concurrent jurisdiction on that. That case belongs strictly before the NLRB under Garmin preemption. There is concurrent jurisdiction for a duty of fair representation claim. But the problem with the duty of fair representation claim... I've focused on concealment. I want to just turn to counts two and three for one moment because those do address, attempt to address, the duties owed by the union. And the problem with those two counts, as the district court pointed out, is nothing happened. You can't just put maintain, the union maintain the agreement in your complaint and make it timely. The agreement's entered into in late July. Nothing happens. The union is certified and the plaintiff sue in May. The cause of action... If the duty of fair representation, speaking hypothetically, is violated by refraining from demanding certain things because you have a contractual obligation not to make those demands, why isn't the not doing something a violation of the duty of fair representation? Well, your honor, the duty of fair representation cases in the context of negotiations do not judge the union's conduct in terms of proposals made. You look at the final agreement. The final agreement here would be a first collective bargaining agreement, which we are far from being able to achieve at this hospital at this time. Never been signed it out. There's no collective bargaining agreement. Oh, never, your honor. We have been unsuccessful, as many newly elected unions are unsuccessful, in reaching a first contract. But the point, your honor, is if the union has in some way engaged in, and it would be analyzed as arbitrary conduct or bad faith conduct, in reaching a certain agreement, when the agreement impacts employees is the time to raise a suit about it. And that agreement we've never yet reached. The nature of that suit would be? A duty of fair representation suit. Thank you, your honor. My time has expired. We ask that you affirm the district court. Thank you, your honor. May it please the court. A few small quick points. The first of which has to do with the agreement. Right now, the hospital and union dispute whether or not there is in fact an agreement. But on this record and at this time, the answer to that question is clear. When you speak of agreement, this is the side letter. This is the, but not a collective bargaining agreement. Yes, your honor. We're all clear on that. Yes, your honor. And. Go ahead. Yes. And so, there's a dispute there. So, as at this time, you know, the court can't decide there is not a side letter agreement or there is. There simply is not a factual record there. And again, that's being litigated below between the hospital and the union. As far as the point that this case is not ripe until there's a collective bargaining agreement, first of which this is somewhat inconsistent with the other positions the union is taking, that this case is filed both too late and too early. Oh, but it's not truly inconsistent because they could say if it has, if it needs X, it's too, it's too early. And if it doesn't need X, it's too late. But it needs something for it to go forward. And if you need more, we don't have it yet. You know, I mean, that's not, it sounds, glibly it sounds great to say it's either too early or too late. But it's possible to argue that something's either too early or too late, right? Well, even if it's taken as an alternative position, just to address it on its own as an alternative position, the plaintiffs do not have to wait until there's a collective bargaining agreement to bring this case for two reasons. First, the duty of fair representation applies to contract negotiations, not just to the final execution of an agreement. And second here, under plaintiff's theory of the case, there already is an agreement, a side letter agreement that is binding. And it is not merely a guideline. It is injuring, in what way? In terms of standing. In terms of standing. One is the future threat of there not being an improvement in health benefits. How can we know that without there being an agreement? With the side letter or collective bargaining? How can we know that that won't all, once there's a bargaining, if there is ever bargaining that reaches an agreement, that's when we'll know, isn't it? We will not know before. We won't be able to monetize exactly how much it may be, but of course, you know, a plaintiff is entitled to injunctive relief before a harm befalls them. So I don't think they have to wait. Injunctive relief to say? To eliminate this pre-recognition agreement. So when there is collective bargaining, if there is. Does it matter to you that it hasn't been signed and that it's expired? Under Affinity's position down below, they say there's an implied agreement because Affinity basically gave its side of the deal. And it was only at that point that the union turned around and said, no, we don't have a contract. So Affinity is arguing they do, in fact, have an implied agreement by performance. What relief? I don't want to interrupt you. Go ahead. What? What? I thought the relief, bottom line relief you wanted was to invalidate the obligation of the side agreement. Yes, Your Honor. But now it appears that they don't even want to defend the validity of the side agreement. They just want, on different grounds that are not viewed as aspersions, want it not to apply. So why now, I'm wondering, have you sued the correct party? Don't you need to sue the hospital to get them to say that they agree? Because if we reverse and send it back and the district court says this agreement is not valid, that's not going to bind the hospital, is it? I believe it would. If this court declared that agreement illegal, that would be binding on the hospital. And I can't... That doesn't sound fair. I mean, what if they have some brilliant argument? We never thought of. They're not a party to this suit. Why did you sue the union rather than the company for that relief? The company doesn't owe a duty of fair representation. I don't have. I would. But you're saying that they lose out on their contractually obtained benefit because the other side to the contract couldn't enter into such a contract or something like that, right? I mean, it does sound strange for you to be challenging a contract where you've sued the people who don't want to be bound by the contract and you haven't sued the people who do want to be bound by the contract. Yes, Your Honor. It's... So you're asking for a judgment that you then can use to, now I'm a little confused exactly what it is you're asking for. You want us to declare it invalid even though the only party that wants it to be valid is not a party to the suit. Yes, Your Honor. That's got to be strange. And you don't even represent all the employees. No, Your Honor. But I mean, a breach of duty of fair representation to one is a breach to all. I mean, so if it's illegal as to my three clients, it's still just as illegal if I had a hundred individuals that I represented at the hospital. You'd probably be more effective if you just took some of that money and gave it to the union so that they could make a better argument when they're negotiating against the company. I'm just... I take that back. Do you have anything else? It's an interesting argument. Yes. Not that we haven't already covered, Your Honor. Thank you for your time. Thank you. Other questions? No. Thank you. The case will be submitted.